The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence or to receive further evidence. However, good grounds have been shown to make some minor modifications to the Opinion and Award.
The undersigned find as facts and concludes as matter of law the following, which were entered into by the parties pursuant to the executed Pre-Trial Agreement as
STIPULATIONS
1. That the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant employer and the plaintiff employee at all relevant times herein.
3. That Lumbermens Mutual Casualty Company provided workers' compensation coverage for the defendant-employer at all relevant times herein.
4. Plaintiffs average weekly wage was $219.52, yielding a compensation rate of $146.35.
5. The parties entered into a Form 21 Agreement dated July 30, 1995, wherein the defendants admitted that plaintiff sustained a compensable injury to her left foot on July 13, 1993, while in the course and scope of her employment with defendant-employer. The defendants agreed to pay plaintiff compensation at a rate of $146.35 per week beginning July 21, 1993 and continuing for the necessary weeks, and that plaintiffs disability began on July 14, 1993. Thereafter the parties entered into a Form 26 Agreement wherein the defendants agreed to pay plaintiff for a 5% percent permanent partial disability rating she had received for her left foot. Both of the said agreements were approved by the Industrial Commission.
6. The issue to be determined is whether plaintiff has sustained a change of condition? And if so, what if any additional benefits is she entitled to receive?
* * * * * * * * * * *
Based upon all of the competent evidence adduced at the hearing and from the record, the undersigned make the following:
FINDINGS OF FACT
1. At the time of hearing, plaintiff was thirty-seven years old.
2. As a result of plaintiffs admitted injury of July 13, 1993, she sustained a fracture to her left foot. She was seen and treated by Dr. Edward B. Weller for her injury.
3. Dr. Weller placed plaintiff's left foot in a hard cast for two weeks, thereafter he removed the hard cast and placed a soft cast on plaintiff s foot. The second cast was removed after a two week period and then plaintiff was given a brace to wear.
4. Plaintiff returned to work at the end of August 1993 and she was able to perform her job. Plaintiff was released by Dr. Weller on September 6, 1993.
5. Plaintiff did not see Dr. Weller again until February 8, 1995, at which point she was complaining of pain and swelling in her left foot. Plaintiff had not contacted Dr. Weller between September 6, 1993 and February 8, 1995 concerning any problems with her left foot.
6. Plaintiff was next seen by Dr. Weller in June 1995, when plaintiff was complaining of tightness in her left ankle.
7. Plaintiff has cerebral palsy and it causes the body's motor system to become very tight, and in plaintiff's case somewhat spastic.
8. In July 1995, Dr. Weller performed a surgical release of plaintiff's left Achilles tendon. This release was performed because it had tightened to the point that plaintiff was not able to place her left foot flat upon the floor.
9. Dr. Weller acknowledged that the tightening of the Achilles tendon is a natural process that occurs when an individual has cerebral palsy.
10. When asked whether plaintiff s July 13, 1993 injury caused her Achilles tendon to tighten, Dr. Weller indicated that he could not say for sure that it did. Dr. Weller went on to say that he thought that the injury did cause her Achilles tendon to tighten but from a medical standpoint he was on thin ice making that statement because it was based upon his feelings and not the physical evidence.
11. Dr. Teasdall performed an independent medical evaluation of plaintiff on October 10, 1995. He concluded after examining plaintiff, taking her history of events and reviewing the medical records that plaintiff's condition of the tightening of her Achilles tendon was a direct result of her cerebral palsy and not her injury at work.
12. The tightened Achilles tendon for which plaintiff underwent treatment beginning February 1993 was not proven by the greater weight of the medical evidence to have been a direct and natural result of her injury at work on July 13, 1993. Consequently, plaintiff did not sustain a material change for the worse in the condition she suffered as a result of that injury.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the undersigned make the following
CONCLUSIONS OF LAW
1. Plaintiff did not suffer a material change of condition as to her original injury of July 13, 1993. G.S. § 97-47.
2. Plaintiff has failed to prove by the greater weight of the evidence that the tightened Achilles tendon for which she underwent treatment beginning February 1995 was a natural consequence of her injury of July 13, 1993. G.S. § 97-2.
3. Plaintiff has failed to prove by the greater weight of the evidence that she is entitled to recover any further workers' compensation benefits in this matter. G.S. § 97-2 et seq.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned make the following
AWARD
1. Plaintiffs claim for benefits under the Workers' Compensation Act must under the law be and the same is hereby DENIED.
2. Each side shall pay its own costs.
This the _____ day of August, 1997.
 S/ ____________ MORGAN S. CHAPMAN DEPUTY COMMISSIONER
CONCURRING:
S/ ____________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ____________ COY M. VANCE COMMISSIONER